May it please the Court, Jeffrey DeMaine from Altula-Burzon in San Francisco, representing the Defendant Appellant, Professional Engineers in California Government. My intention is to try to limit myself to 15 minutes and then reserve 5 minutes for rebuttal, if I can. You'll have to help keep track of your time. Yes, thank you. Your Honor, there are many issues in this case. I know I'm not going to have time to discuss all of them. I'd like to basically discuss two or I'd like to divide my argument into two parts. In the first part, I'd like to discuss an analytical framework that I think explains the case and explains why the district court should not have reached the chargeability issues, in other words, whether certain challenged union expenditures were chargeable to agency fee payers. In the second part, I'd like to then discuss that chargeability question, which is in the first part of the question, but first I want to present this analytical framework about why the Court shouldn't have reached those issues. It starts with the fundamental principle that comes down from the Supreme Court's decision in Street all the way down through this Court's decision in CA, which is that a court cannot presume that fee payers object to paying the non-chargeable portion of the fee. If they don't want to pay the non-chargeable portion of the fee, the burden on them is to object. And for that reason, challenges to unions' chargeability determinations cannot be brought as class actions. That is Street, that is Allen, that is this Court's decision in CA v. McDonnell-Douglas. I take it implicitly you have no quarrel with the class action with respect to the adequacy of the Hudson notice as a separate item. Yes.  In other words, was it properly audited and that sort of thing, yes. As a preliminary matter, you concede the inadequacy of the Hudson notice at issue? The inadequacy as far as the judge's other findings such as that it was not properly audited, yes. We're not disputing that on appeal. That is correct, Your Honor. Now, because a chargeability challenge, however, cannot be brought as a class action, what the plaintiffs did in this case was they didn't plead a freestanding chargeability claim. What they tried to do is dress up a chargeability claim as a Hudson notice challenge. In other words, they argued that because the union described certain expenditures in the Hudson notice as chargeable, which the plaintiffs contend are nonchargeable, they claim the Hudson notice is invalid. And that's how they tried to plead their chargeability claim. The problem with that is, analytically, you run right up against this Court's decision in Knight, Knight v. Kenai Peninsula Borough School District, which says a challenge to chargeability cannot be brought as a Hudson notice claim. In fact, what Knight said is that there is, quote, a clear distinction between the adequacy of a Hudson's of a union's notice addressed by the Supreme Court in Hudson and the propriety of a union's chargeability determinations considered separately by the Supreme Court in Leonard. Now, the plaintiffs tried to get the court was dealing with, excuse me, a apparent factual determination by the district court that a given charge was proper. Isn't that correct? I'm sorry. I couldn't hear you. Is it the case that in Knight we were dealing with a case where the district court had determined that a particular charge was proper? No. In Knight, most of Knight concerned the audit. But what this portion of Knight was about was the plaintiffs alleged that the Hudson notice was deficient because the union charged for litigation, and the plaintiff alleged that that was, in fact, a nonchargeable item, that the union's Hudson notice was defective because it described litigation as chargeable when, in fact, it should be nonchargeable. And what the Supreme Court said, excuse me, what this Court said in Knight was that the district court shouldn't deal with chargeability in terms of the Hudson notice. Now, the plaintiffs tried to get... What the Court went on to say is, therefore, we vacate the portion of the district court's order in which it held that contested litigation expenses were properly chargeable. Yes. Well, isn't that something different than we have here where there's a determination that certain charges may not be appropriate? No, Your Honor. What the Ninth Circuit did was vacated the decision as to chargeability. Whichever way it came out, the Ninth Circuit would have vacated it because... How do you know that? Because what the Ninth Circuit said is, at the notice stage, we do not decide whether expenses are properly chargeable. That's from page 814 of the Ninth Circuit's decision. You don't address chargeability one way or the other in addressing the Hudson notice. Now, the plaintiffs attempt to get around that Knight problem by saying, well, there's an exception where the expenses are, quote, unquote, clearly nonchargeable. Now, that doesn't help them for two separate reasons. First of all, there is no such exception. Knight doesn't create any such exception at all, and no other decision of this Court has created any such exception. The plaintiffs rely for that on the Sixth Circuit's decision in the Gibson case, which the Ninth Circuit did mention as a decision it relied on in this instance, but it didn't rely on that part of Gibson. It relied on the part of Gibson that states the general rule that chargeability claims cannot be brought as Hudson notice claims. Finally, even if that rule were the rule of this circuit, the clearly nonchargeable, it wouldn't help the plaintiffs. And the reason is this. For the reasons I'm going to discuss later in the argument, there is no clear law that the types of lobbying expenses that are at issue here are clearly nonchargeable. There's no clear law on that. Leonard doesn't hold that. The second part of that is if you even look at Gibson, that's exactly what Gibson said. In Gibson, they went on to analyze the quote, unquote, clearly nonchargeable issue and found that the lobbying expenses there were not clearly nonchargeable because, in fact, Leonard did not hold that lobbying expenses are clearly nonchargeable. So that means that the plaintiffs cannot raise their chargeability claim. Excuse me? That's Gibson. That's Gibson, 730 F. 3rd at 732. Now, the plaintiffs, therefore, can't raise their chargeability challenge as a Hudson notice claim, so they fall back in their appellate brief to another argument. The other argument is that, well, the district court had to address our chargeability challenge because there were other problems with the Hudson notice, the lack of auditing, the failure to properly audit, for example, and the district court had to award compensatory damages, and in order to figure out the compensatory damages, the district court had to reach our chargeability claim. Well, there's several problems with that, and it's just simply not the case. The first problem is the waiver problem. The plaintiffs waived their chargeability challenge in their brief in support of their motion to dismiss Pegg's counterclaim. They made it very clear that they were not challenging the amount of the fee, which is another way of saying chargeability. It's chargeability that determines the amount of the fee. The district court then relied upon that waiver, explicitly relied upon that waiver in granting the plaintiffs' motion to dismiss. Having done that, having made their choice to waive that claim or to clarify the scope of their claim so that it didn't include a chargeability challenge, the plaintiffs are judicially stopped from changing their position and later saying, oh, we want to challenge the union's chargeability determinations. We want to challenge the amount of the fee. And that comes out of a whole line of cases that culminate in this Court's decision in Helfand v. Gerson. The doctrine of judicial estoppel prohibits a party from taking inconsistent positions with regard to its claims in order to gain an unfair – in order to gain an advantage. Now, since the chargeability challenge was waived, the district court, even if it were to award compensatory damages for the other problems in the notice, should have looked at – should have awarded the damages based on the union's determinations about what is chargeable and what is not chargeable and should have, at the most – and for reasons I'll get into in a second, it shouldn't have awarded any compensatory damages, but if it did award compensatory damages, it should have awarded at most that the union return to the fee payers that money that the union said. Counsel, can we just go back for a second? Yes. Let's unwind the – what was – what happened here. And let's just say in that response – or that reply to your opposition to the motion to dismiss, they had not said, were – chargeability's not an issue. What would have been the consequences of making that statement? In this proceeding. The consequences in this proceeding would be that they would not have waived their ability to challenge the union's chargeability determinations. All right. Because they wouldn't be judicially estopped from their – they would have lost – they probably would have lost their motion to dismiss, but they made a choice. In other words, my point is, in litigation, you come to junctures and you have to make choices. I understand the concept, Counsel.  I understand the concept of judicial estoppel. What I don't understand is they made the statement – you make the statement that the judge, the district court relied on the representation that they did not have a chargeability claim in order to grant their motion to dismiss, your counterclaim, right? Yes. Okay. If they hadn't made that statement, would they – would the district court have had to deny that motion to dismiss and you would have had a valid counterclaim to pursue on the exhaustion issue? That's certainly – that's certainly possible, Your Honor. Yes. That is possible. But how do we – The judge would have reached the merits of the counterclaim because they hadn't made that concession. Right. So – but how do we – how do we evaluate the reliance prong of judicial estoppel? I don't think – Your Honor, because the court – the district court expressly relied on it, I don't think that there's anything to evaluate in the – in the reliance plan. I think so because you're counsel, but I'm the judge. So I want to have – I have a job to evaluate. So I'm just saying he did say that, but I want to understand what are the consequences. If you had – would they have had to exhaust their chargeability claim through administrative procedures? I believe so because what we had here was a state-mandated remedy. It was a – it was a state – it was a procedure that the state set up that it required fee payers to go – go through. But even – even – we don't even have to go that far. We would have had at least an evaluation of our counterclaim on its merits as opposed to on this waiver point. And I think that's enough reliance to bring us within the doctrine of judicial estoppel. But even if the plaintiffs had not waived, even if they hadn't waived it, it still would have been improper for the court to have – have reached the chargeability issue because what – the problem is that reaching the chargeability issue, again, conflicts with the fundamental principle that you cannot presume dissent because awarding compensatory damages on that basis presumes dissent. And instead what the court should have done would have been to have ordered the same sort of reissuance remedy. In other words, order the union to reissue the Hudson Notice, correct it, and allow people a new chance to object, and then give them – give refunds to anyone who objects because that respects the – What would the new Hudson order look like at this point? Excuse me, Your Honor? What would this new Hudson Notice look like? I mean, you seem to have conceded that Category 41 isn't an appropriate charge. You're going to send out exactly the same notice again, reaching the same, what, $32 a month? Or what would it look like? Well – well, first of all, Your Honor, the new Hudson Notice would be – would be properly audited, which is something that the – that the court found to be defective before. In terms of the expenditures, it depends. If the plaintiffs have waived their – their claim for – their chargeability claim, then the – then the chargeability portion of the Hudson Notice could look the same. If they have not waived, that's somewhat nonsensical because you – you know, in effect, say there's this category which we're not allowed to charge you, but we did, and we're going to charge it to you anyway since we did, even though we shouldn't have. It's no more nonsensical, Your Honor, than in any case when a plaintiff waives a certain damage claim. I mean, that can happen in any kind of case. And the point is that it would go out – a new notice would go out. It would have been properly audited, and then people could have the – they could have – they would then have the opportunity to decide whether or not to object in the face of a properly audited notice, which is the only thing that they've lost. They didn't lose the notice, say, by the way, we've conceded, there's this category we've charged you, and we're going to continue to charge you, but we shouldn't. Well, that gets to the problem, Your Honor, with – with the term nonchargeable. They are entitled to charge people for nonchargeable expenses if the people do not object, if the fee payers do not object to be charging for them. That's why the term nonchargeable is a bit of a misnomer. The union has every right to charge fee payers who don't object to nonchargeable – for nonchargeable expenditures, as long as it gives them a properly audited notice. Now, if the – if the Court were to reach the chargeability claims, the Court could order the category 41 expenses, I believe, if those are the political action expenses, it could order the union to – to put – to make those nonchargeable. But unfortunately, I'm sort of running out of time, and I want to move on if I can. Speaking of estoppel, though, having conceded here that – that category 41 should be in a different category, why wouldn't the union be bound to, in a – in a corrected notice, to put category 41 in the category it is now conceded is the proper category? Well, I think the union would be willing to do that. My point is, though, that – that if they have, in fact, waived their chargeability claim, if there's no chargeability claim, they can use – But haven't you waived your right to argue that category 41 was a proper placement in the chargeability category? Well, the union – as I say, the union would be willing to, in a reissued notice, to make category 41 nonchargeable. That's not really – that's not a stumbling block to a reissued notice. The union would be willing to do that. It may not be a stumbling block, but I guess I didn't understand why that wasn't your answer in the first instance. Well, because, again, there is this waiver issue, that if they've waived the ability to challenge any of the union's chargeability determinations, they've waived their ability to challenge the union's chargeability determination as to category 41. But I understand category 41 could be viewed as being in a different – a different – I hate to use the word category again – in a different position. But certainly the other two categories are in a very different position, not only because the plaintiffs have waived the right to challenge them, but also because under Leonard – Well, plaintiffs haven't waived the right to challenge. At most, they've waived the right to challenge in this lawsuit. But presumably the notice is going to give them an opportunity to object. That's the whole point of sending out the notice. There's a difference, Your Honor, between – between objecting and challenging. People can object to paying nonchargeable expenditures, but in terms of challenging the union's chargeability expenditures – in other words, in terms of saying, I disagree with the union's calculations of what is chargeable and what is nonchargeable, this case will be raised judicata as to the money for that year. They've had their chance to litigate that in this case, and they've either waived it or haven't waived it. But you don't get a second bite at the apple, then. So I'm a nonmember. I get the notice. What is it that I still get a bite at? You get to say, I object to paying for nonchargeable expenditures, as the union has calculated them. Now, if you've already submitted that objection before, you've probably already received a rebate. If you haven't submitted an objection before, now this gives you a new opportunity to submit an objection and get the rebate of the nonchargeable. Nonchargeable as the union has defined it or nonchargeable as I might define it? Nonchargeable as the union has defined it, because the class, the fee payers, have had their chance in this case to litigate what is nonchargeable. They've waived that chance, or if the quote finds that they haven't waived it. But you said they haven't had the chance because they took it out of the lawsuit. That's in any case, a plaintiff, race judicata, Your Honor, goes not only to what plaintiffs actually litigate, but what they could have litigated. Here, they started litigating it, and then they abandoned it. You just said they couldn't litigate it. I'm sorry? You just said they couldn't litigate the chargeability determination in the Hudson case. No, no, no. Plaintiffs can always litigate a chargeability claim in a lawsuit that they bring. The only thing they can't do is litigate it as a class action. The individual plaintiffs can litigate it. Isn't this the class action where the class was certified? Yes, and one of the things we've objected to, Your Honor, is the certification of the class, because you cannot litigate a certification. I'm sorry, you cannot litigate a chargeability claim on a class basis. That goes from CA- But didn't they waive that claim? So, I actually think one of the problems is that you're confusing the concepts of waiver and judicial estoppel, and I think you confuse them in your brief as well. They're not the same thing. And so, I don't know, I mean, I think your judicial estoppel argument may have some merit, but this waiver argument, I'm not sure, because I don't think that's exactly what you briefed. Perhaps I'm confusing them. What I perhaps should say is waiver by judicial estoppel. In other words, they're judicially stopped from litigating the claim. In this case. In this case, that's right. Now, I guess, I don't know whether to reserve time or to go into the- I don't want to, because you only have a minute and a half left. Okay. I will reserve my time. The one thing I do want to say, though, Your Honor, is I want to object to the submission of additional authority. None of these are new cases, and the plaintiffs had plenty of time- I couldn't agree with you more, and I was going to raise that with counsel. So, why don't you reserve your time? Thank you. Mr. Buetler? Good morning, Your Honor. My name is Mark Buetler. I represent the plaintiffs and the class who are state-employed engineers. Let me just ask you first, we've received all these supplemental cases, and not a single one of them is a recent case. Why weren't they included in your brief to begin with? They're responding to arguments regarding the Marks-Leonard analysis- You mean responding to arguments in the reply? Correct. Pegg's reply. Responsive to the- No, I am not permitted- No. It's been a very lengthy reply, and it didn't really say much. I don't understand this. I think that's inappropriate, but- No, let me explain, Your Honor. The reply is Pegg's reply that I am responding to. They raised the Marks argument in their reply. I never had an opportunity to rebut that. I had my own subsequent pleading, but I was not allowed to address those arguments. Those were arguments related to their appeal. My subsequent pleading only addressed my cross-appeal, and that's why they're not in that document. All right. Okay. In this case, as we've established, there's no dispute that my client's constitutional rights have been violated. Pegg has not appealed from that portion of the district court's decision. That being the case, this court need not determine whether Pegg could have complied with Hudson by issuing a notice which classifies as those activities which the Supreme Court has already ruled are non-chargeable. That road just gets us to where we already are. What is the remedy for a now-undisputed violation of Hudson's requirements? Counsel, let me just sort of cut to the chase on that question. Why isn't it the case that if the defect is in the process of giving Hudson notice, for example, you didn't use the right addresses or you didn't audit it, procedural problems in the Hudson notice, why isn't the remedy for that giving a corrected Hudson notice that is procedurally complete and proper and giving people an opportunity to object, get their non-chargeable piece back with interest as if the Hudson notice had been correct from day one, why doesn't that completely vindicate the constitutional right to object or not object? Several reasons. One is it's foreclosed by Ninth Circuit case law in Prescott. And secondly, the money has not been resting in escrow all of this time. This money was used to... That isn't my question, really. My question is more of a theoretical question. I mean, if the money isn't there, that's a separate problem about collecting it. But when a fee payer receives a proper Hudson notice, they have an equal constitutional right to pay or to not pay that extra portion that isn't for representational activities. And just as a theoretical matter, for procedural Hudson problems, I don't understand why a corrected notice, a new opportunity to object, get your non-chargeable piece back with interest, why that isn't a complete answer to a pure procedural Hudson notice problem. There are several reasons for that. Again, I've mentioned there's a body of case law which holds that that is not the proper remedy. And this Court would be bound by Prescott nonetheless. But also, it's a recipe for give it a try stratagems, which could happen. In other words, go ahead, charge it, good or bad, and see what happens. The worst that can happen is you just have to do it again. But you get to keep the money if nobody bothers. Counsel, I'm frustrated. And maybe I'm not asking the question very well. But what I want to hear back is what piece of the constitutional rights of the fee payers would not be respected if the remedy that I've just described were the remedy that were given for a purely procedural Hudson notice problem? I think part of the problem is that we keep using the word monetary damages. And I think I'm as guilty of that as the Court and Mr. Domain. But what we're talking about is restitution, the disgorgement of unjust enrichment. The Court has held that the union has no right to take fees absent compliance with Hudson. Now, that does not inexorably lead to the conclusion that you have to give them all back if that was done improperly. The Court in Prescott said all that's required to be returned is the non-chargeable portion for a violation of Hudson. Now, Prescott was similar to this case in that the violations found in this case were similar to those found in Prescott. There was no alleged problem with the fee calculation, but the Ninth Circuit directed the district court to determine what is and is not chargeable. Well, there was another portion of the case that was never appealed where there were additional problems in Prescott. So it isn't exactly parallel. There were parts of that case where there were additional problems that the district court had found with the notice and with, I think, with chargeability, too. I'd have to go back and look at it. That had not been appealed. So I don't know how much it actually stands for in the way that you're arguing it. With all due respect, Your Honor, I do believe that in that case there were no allegations of improper charging. And the Court nonetheless sent it back to the district court to determine what is and is not chargeable. The district court in that case, unlike in this case, had not done that. And if the restitution is not called for, then why must the district court determine what is chargeable and what is not? In a case where there's no allegation of bad fee calculations, the conclusion, I think, is inescapable that that is the remedy for a violation of Hudson. And I should say that's consistent with cases before and after Prescott on that issue from other circuits. The Kramer of the Sixth Circuit, class action, court-ordered refund of the non-chargeable portion of the agency fee. Ho and other Sixth Circuit cases have done that as well, Gibson to be one. In Ho, Third Circuit, class action, refund the non-chargeable portion of the agency fee. Now, Wessel, which came after Prescott and cites Prescott for this proposition, comes to the same conclusion. That is not a class action, except that the plaintiffs were objectors and non-objectors, and there was no distinction as to who got the refund of the non-chargeable portion. Now, this Court did address the issue in Cummings, or did not address, or obliquely referenced the issue in Cummings, which was a Ninth Circuit case. Again, that was a class action, and this Court, the Ninth Circuit, recognized that prior circuit law did normally require refund of the non-chargeable portion of the fee for a Hudson violation. The Court did hold that the restitution otherwise appropriate was not required in that case because of the prompt remedial action taken, and specifically the District Court's contribution to the delay, which was 13 months. The Court did say that 13 months normally would be inappropriate in order to reissue a Hudson notice, but based on the extraordinary facts in that case, a different remedy was required. Let's look at this case, however. We have four years of litigation. We have no remedial action. We don't even have remedial action as to the activities which they now admit is illegal, that is, the bad audit and the illegally charging, forcing nonmembers to subsidize Category 41 activities. Category 41 by itself is one-sixth of Pegg's budget for the relevant year. In short, Pegg is not within the exception to Prescott that the Cummings Court recognized. You made reference to four years, and this inches toward another issue having to do with the duration of the period. What period of time are you objecting to? That is, beginning with, was it March of 1999? From the beginning of the fee collection, which is in March of 1999. To what point? Until the day comes when they comply with their Hudson obligations. Does that cover anything more than that first fiscal year, whatever it's called? I mean, does it go beyond a 12-month period? Our claim is that the Court ruled to the contrary, although not explicitly, in calculating the amount of damages only for the time period in which Pegg issued the bad notice and then reissued the bad notice. And that is the calculation of damages implicit in the District Court's order. I understand the District Court cut it off at seven months. That's correct. On the October reissuance. And what I'm trying to find out now is, is that cutting off at seven months, and it should have been 12 because this is all done on an annual basis, or are you continuing your allegation into subsequent years? No, Your Honor. We're continuing it to subsequent years. We're not contending that the issuance of the notice was what triggered my constitutional, my client's constitutional rights. It was the taking of the money absent compliance with Hudson. And as long as that money is being taken absent compliance with Hudson, it's done illegally. And the claim in our position is that claim still lives. The District Court made its determination that the audit requirement was not satisfied in connection with that March 1999 notice. Has there been any determination as to whether requirements have been satisfied for any subsequent notice sent out by the union? No, there has not been. And we would ask that the matter be remanded as to those subsequent periods. Although I will say this, after the seven months, we still have left in that year in notice with the same accounting period and the same non-audit. October notice, I'm just kind of a blank as to what happens after that. I'll say I get to those issues, but I'm not even sure what the courts are involved in this case. The court would not permit pursuit. Okay. Pegg's 95% chargeable. The dealer came up with a different number, 56%, which means that 54% Pegg's activity is committed to non-chargeable political expenses. And Pegg has, Pegg argued they're bad notice. They can audit it and they don't have to reclassify the chargeable expenses. That's their argument. They only have to give back the 5%. But then following reissue what you call bad notice, then non-member union members have the right to object and say, we don't pay any of this and they don't have to pay it, right? Non-union members do not have to pay anything that's identified here, which is not chargeable. Object, right? They have to object. They object, yes. When they get a good hustle, they're expected to it or forfeit to recover. Well, not forfeit, they can still... When this notice went out, the defective notice, March 99 notice, were there objectors? Objectors, yes. Okay. So what is the... One of my clients was an objector. Okay. What is the basis for giving restitution to everybody? Discouraged the unjust enrichment. The union had no right to take those fees from them. And discouraging the... Now it is an equitable principle. You know, if there are non-union members, you would have decided not if had been adequate. To give the money back or not cast a check or the money back. You know, what they're doing, giving the money, keeping the money, and the... Adequateness goes up. Which is the remedy for... I believe that could be a... If one were to issue... Fully question. Well, as I understand... That the remedy for a notice is... Right? And that gives everybody the right to... Even though they don't want to belong to the union, they are in agreement with how the union is spending the... Right? They could go. They don't have to object. So we have to... We offered in the district... People to opt out from the remedy if that was their preference. The district court did not take us up on our offer, nor did the... Nor did PEG. The system is set up by the Supreme Courts. Action is someone to affirmatively raise their hand and say, I'll pay the non-representational... Well, you're presuming that it would be an opt-out notice instead of an opt-in notice. I'm talking about Hudson notice to begin with. People disagree with paying the entire amount of the... Equal to the dues. The system is not to be presumed if and only if the Hudson notice is valid. Takes right back to where I started, which is saying that you reissue a valid notice and... That's... That seems like the complete remedy. It does not deal with... The union has taken money and you... With my client's money... That doesn't... However, it does not undo the campaign activity, the political activity that was done with their money in violation of their rights. That's why it's a remedy. And you have to look at, you know, what did the money they were not entitled to? And the answer is yes, we'll let them keep what they could have gotten anyway, but they have... What they took beyond that. How do you measure that? I mean, suppose they... Let's see how you measure that. I suppose they took the money under a defective notice, used it to elect... Toward electing a particular candidate. And then you say, well, you're going to give it back with interest. There's no way to undo that they use that money. That's what you're saying, right? And that's why we have to look at... You can't even undo it through this litigation. No, that's why we have to look at equitable principles. And monetary damages probably is not the correct prism to look through. Restitution is a substitute for monetary damages. And it's used to disgorge unjust enrichment. Let me just... I don't... Okay. I don't think you've really addressed this judicial estoppel question. Are we dealing with the waiver or the... Well, they call it waiver, but it's really judicial estoppel. Okay. In this case, you made a statement in this case, and your reply to the opposition... There was no waiver, Your Honor. Okay. You said repeatedly the non-members were only challenging the procedures, were not alleging that the fees too high, were just alleging that the fees... That the procedures for taking the fee are constitutionally inadequate. And then... Where's the judge's order? It does seem that the judge in his order relied on that statement. The context is important because that was... The question was whether the arbitration remedy... The arbitration would bar the action. And A, there was no harm to respond to your question to Mr. Domingue. There's no exhaustion requirement, and that's clear from case law. No, my question is on reliance to him. My question to you is, you made this representation to the court. He granted your motion. You took the chargeability out of the case by virtue of that. And then... No, Your Honor. That's taken out of context. There was no waiver of the restitution for the Hudson violations that were alleged. All we were saying was that there were rights arising under Hudson, and the arbitrator isn't going to do anything about that because they don't deal with Hudson claims. They don't deal with Hudson notices. But that should not be interpreted to mean that we were waiving our right to restitution for the Hudson violations that were clearly alleged. And there are a couple of points that need to be made with respect to that. There was no class certified at this time. Now, obviously, my predecessor could not waive the rights of people whom he did not represent. And moreover, in class litigation, the district court has an obligation to supervise. But if a class is later certified, the class can be certified only with respect to claims that are presently in the litigation. So if named plaintiffs or individual plaintiffs already were stopped or waived or gave up, abandoned, whatever term we want to use, certain claims, and had only the other live claims, then when a class is certified, how can that revive claims that aren't anymore in the litigation? The district court has an obligation to supervise class litigation, even pre-certification. And the district court would be derelict in its duties in protecting the interests of the class by allowing such a waiver. So it's supposed to, the district court is supposed to get a document from lawyers representing the purported class saying, we do not make this claim. He relies on it. And he's somehow derelict in his responsibilities? No. I'm saying if that's the way it happened, that would be the conclusion. But it didn't happen. There was the word waiver doesn't happen to that. You're saying that piece of paper wasn't filed or that we're not understanding what it says. The latter, Your Honor. All it says is that this was not a pure, you know, Leonard-type case, that there were Hudson allegations alleged, and the rights arising under Hudson were implicated. And therefore, there's no, the arbitration really is not going to affect this litigation. Therefore, the counterclaim, the exhaustion requirement really doesn't apply. And that was consistent with case law. The word waiver never showed up in this litigation until. Waiver is not necessary under the principle, I mean, the word waiver and the concept of express waiver doesn't, isn't necessary under the concept of judicial estoppel. That you make a representation to the court. The court relies on it. And you get an advantage in the litigation as a result of that. And then you later switch your position to judicial estoppel. But there was no switch. It was never stated that we were going to waive our rights for restitution for the Hudson violations alleged. That was always in the case. And this has been twisted out of context. And not only is that my understanding. Let me repeat what the court says. The court says that, that Pegg asserts this section, arbitration section, sets forth a mandatory procedure for persons who wish to challenge the determination of fair share fees. However, plaintiffs assert they challenge Pegg's action for failure to comply with Hudson, not because of questions involving the propriety of the fee determination. The statement that we made that the court is addressing is that we were not simply challenging the, the, the chargeable expenditures. We were not simply making a, a. You never used the word simply in your papers. Oh yes, I did your honor. You said a lot more though. My predecessor did your honor, I should say. Yeah, let's make that clear. You said Pegg, Pegg clearly does not understand the non-members allegations. The non-members repeat yet again that they challenge the constitutionality of defendant's procedures and then go on to say the non-members do not allege that the fee is simply too high. The non-members do allege that the defendant's procedures were constitutionally inadequate. There's a lot more than that. Every statement that is true. We are alleging that the procedures were bad and we are not alleging that the, the fee was simply too high. We're alleging that. Was complicatedly too high? Is that, I mean. No, we're saying that, you know, our claim went beyond that lone constitutional defect. That we, there was more to this case. This was a Hudson case and the, and the context is arbitration and we're saying that the arbitrator can't help us here. I think we understand your argument. Thank you. Your time has expired and I believe you have about a minute left. Thank you, Your Honor. I just want to make two points. I'd like to respond to Mr. Buechler's statement. I wrote it down so I think it's a pretty close to an exact quote. He said, Dissent is not to be presumed if and only if a valent Hudson notice is issued. That is directly contrary to this Court's decision in the Mitchell case, which is 963 F second 258. In the Mitchell case, there were defects in the Hudson notice. The Mitchell, the district court found that there were those defects and on the basis of that and other things concluded that you could presume that fee payers would object. The Ninth Circuit noted in its decision that the defects in the Hudson notice were not appealed. So that's settled. There are defects in the Hudson notice. But the Ninth Circuit still held that despite those defects in the Hudson notice, dissent could not be presumed. So Mr. Buechler's statement is contrary to this Court's decision in Mitchell. Counsel, let me ask you a question. Sure. For that period of time for which the class is certified, was there ever an adequate Hudson statement issued by the union? In our case here? Yes. No, Your Honor. And that gets me to the other point that I believe I wanted to make, which is that Mr. Buechler talked about remedial measures as in the Cummings case. Here, there's this – because of the chargeability challenge, it wouldn't have made any sense for the union to reissue the Hudson notice, say, this time properly audited, until we get this straightened out about whether things are chargeable or not chargeable. That's what we're trying to do here. Now, unfortunately, we've never gotten to the actual issue of chargeability. I suppose you'll have to decide that on the basis of the briefs. But it really – it really wouldn't have made any sense to send out a new notice until we get this straightened out, this chargeability issue. Thank you. Thank you, counsel. We appreciate the submissions of the parties. The case just argued is submitted. And we will take a short recess before we conclude the final case on our morning calendar.
judges: Graber, Wardlaw, Clifton